IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 03-cv-02506-MSK-CBS

CRAIG MAGRAFF,

     Plaintiff,

v.

LOWES HIW, INC.,

     Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for

Summary Judgment **(# 36)**, the Plaintiff's response **(# 40)**, and the Defendant's reply **(# 42)**

## BACKGROUND

The following facts, except where noted, are undisputed.

The Plaintiff, who is black, was hired by Defendant Lowes HIW, Inc. ("Lowe's"), in

2000, and promoted to Assistant Manager in 2002.  At the time he was hired, the Plaintiff signed

a one-page "Contract of Employment" that reads, in part, "It is further agreed by and between

the parties hereto that this agreement shall be for an indefinite term and shall be terminable at the

will of either party without notice and without cause."  Lowe's also maintains a Performance

1

Management Policy, addressing employee discipline, which repeats the "at will" status of employees' employment, and disclaims any contractual effect that the discipline policy could be perceived to have.

In January 2003, Mike Brown, Lowe's' Manager, received a call from Brandy Bird, a Lowe's Sales Associate, informing him that Bird suspected that the Plaintiff had raped her at a New Year's Eve party at the Plaintiff's apartment.  Brown reported the incident to Human Resources Manager Willie Finch, who began an investigation.  Finch first spoke with Bird, who stated that, the morning after the party, she woke up naked with the Plaintiff in his bed, but that she had no recollection of removing her clothes or getting into bed.  Finch then sought to discuss the incident with the Plaintiff, who claimed that he was drunk that night, and that someone had given him a "mickey."  The Plaintiff acknowledged waking up with Bird, but denied that he had put Bird in the bed or that he had sex with her.  It is undisputed that, in response to Finch's request that the Plaintiff identify other people at the party, the Plaintiff did not.  The Plaintiff contends that he was passed out, and did not know who was present, while Finch believes that the Plaintiff was being evasive.

There is a dispute as to how the interview with the Plaintiff ended.  Lowe's contends that the Plaintiff placed his keys to the store on the table unbidden and walked out before Finch had completed the interview.  Brown and Finch interpreted this act as indicating that the Plaintiff was

resigning his employment. The Plaintiff claims that he answered all questions, and was then told to leave his keys as he was being suspended with pay until further notice.

It is undisputed that Finch had instructed the Plaintiff not to discuss the contents of their meeting until the investigation was complete. It is also undisputed that, immediately after the meeting, the Plaintiff had discussions with at least one other employee, Damon Garcia, in which the Plaintiff discussed the investigation. Lowe's alleges that the Plaintiff also contacted Bird, and told her not to participate in the investigation, although the Plaintiff denies doing so. Lowe's considered the Plaintiff's conduct to be a refusal to cooperate with the investigation, an offense which is punishable by termination. In addition, the Plaintiff did not return to work after the meeting with Finch and Brown, and after three days of his absence, Lowe's deemed the Plaintiff to also be terminated for failing to appear for work as scheduled.

The Plaintiff then commenced the instant action, alleging three claims: (i) race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; (ii) breach of contract, in that the Plaintiff was terminated without just cause and without warning; and (iii) promissory estoppel, in that the Plaintiff relied upon certain corporate policies that were not followed regarding his termination.

## JURISDICTION

The Court has subject-matter jurisdiction over the Plaintiff's Title VII claim pursuant to

28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the breach of contract and

promissory estoppel claims pursuant to 28 U.S.C. § 1367.

## ANALYSIS

### A.  Standard of review

Summary judgment is appropriate only if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

*Cattret*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 569

(10th Cir. 1994); *see also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.

Supp.2d 1106 (D. Colo. 2002). Whether there is a genuine dispute as to a material fact depends

upon whether the evidence presents a sufficient disagreement to require submission to a jury or

conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv SAP, Inc.*, 210 F. 3d 1132 (10th Cir. 2000);

*Carry v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).   A fact is "material" if it

pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so

contradictory that if the matter went to trial, a reasonable party could return a verdict for either

party.  *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving

party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.,* 817 F. 2d 83, 85

4

(10th Cir. 1987); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527

(10th Cir. 1995); *Grayson v. American Airlines, Inc.*, 803 F. 2d 1097, 1101 (10th Cir. 1986).

The analysis to be applied differs depending on whether the moving party is also the

party with the burden of proof at trial.  Here, Lowe's challenges the Plaintiff's ability to carry his

burden of proof to establish the elements of his claims.  Where the non-movant bears the burden

of proof at trial, the non-movant may not simply rest on his pleadings, but must affirmatively

present competent evidence to establish a genuine issue of fact with respect to every challenged

element of his claim. *Ribozyme*, 209 F.Supp.2d at 1111; *Reed v. Bennett*, 312 F.3d 1190, 1194

(10th Cir. 2002).

**B. Discrimination claim**

Claims of discrimination under Title VII are examined under the familiar *McDonnell-*

*Douglas* burden-shifting formula.  To prove a claim of discrimination under Title VII, the

Plaintiff must first establish a *prima facie* case that: (i) she is a member of a protected class; (ii)

that she was qualified for the position she occupied or sought; (iii) that she suffered an adverse

employment action; and (iv) that such adverse action occurred in circumstances giving rise to an

inference of discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993);

*Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir.2004); *Martin v. Nannie & the*

*Newborns, Inc.*, 3 F.3d 1410, 1416-17 (10th Cir.1993).  If the Plaintiff successfully carries this

burden, the Defendant must produce a legitimate, non-discriminatory reason for its actions, and

the Plaintiff must then prove that the proffered reason is pretextual.  *Id.*

Lowe's appears to concede that the Plaintiff can establish a *prima facie* case, and proffers

two legitimate, non-discriminatory reasons for the Plaintiff's termination - that he abandoned his

job and that he interfered with an investigation.[1]  Lowe's contends that the Plaintiff cannot come

forward with evidence that raises a genuine issue of fact as to whether these reasons are

pretextual.

---

[1]The Plaintiff's response alleges that Lowe's never asserted interference with an investigation as a basis for his termination.  Specifically, paragraph 3.b of the Plaintiff's brief states that "Mr. Magraff was not terminated for discussion of an ongoing investigation."  No citation to the record accompanies this assertion.  The Plaintiff's general citation at the end of the paragraph containing this assertion refers the Court to his own "paragraph j."  That paragraph asserts that "as admitted by Defendant in its brief, and in the deposition of Mr. Brown and Mr. Finch, Mr. Magraff was alleged (sic) terminated for job abandonment . . . Please see paragraph k to this section of the Defendant's brief.  In addition, please see Exhibit 'A,' p. 41 1.15 - p. 42 1.5."  Following the trail of breadcrumbs to paragraph k of the Defendant's brief yields no support for the Plaintiff's proposition; paragraph k does not discuss interference with the investigation as a basis for termination, but the paragraph immediately preceding it does.  Thus, the last remaining source for the Plaintiff's assertion is the cited deposition excerpt.  Exhibit A to the Plaintiff's brief is a portion of Finch's deposition.  However, pages 41 and 42 are not included in that excerpt.  Assuming that this is a clerical error in attaching the proper pages, the Court has reviewed the cited portions of pages 41 and 42 of Finch's deposition that are included in the Defendant's Exhibit, and finds nothing to support the Plaintiff's assertion that interference with the investigation was not a basis for the Plaintiff's termination.

In contrast, Lowe's cites to a specific exchange in Finch's testimony in which Finch states that he determined that the Plaintiff had violated Lowe's' policy regarding investigations.  Because the party with the burden of proof has the obligation to identify specific evidence creating an issue of fact to avoid summary judgment, the Court concludes that the Plaintiff's failure to cite to evidence in the record in support of his contention prevents that contention for raising an issue of fact as to whether interference with the investigation was a stated basis for his termination.

With regard to the job abandonment justification, there is quite clearly a dispute of fact. The Plaintiff claims that he was told by Finch that he was being suspended; Lowe's contends that the Plaintiff was not told he was suspended.  If the trier of fact were to resolve that dispute in the Plaintiff's favor, his absence from work would be the necessary result of that suspension, and termination of his employment on the grounds of job abandonment would appear to be pretextual.  Accordingly, there is an issue of fact with regard to pretext on this portion of the discrimination claim.

Lowe's also proffered a second, independent non-discriminatory reason for the Plaintiff's termination - that he interfered with the investigation.  Here, there is no factual dispute; the Plaintiff admitted to doing so in his deposition:

> Q: And what did you tell [Damon Garcia]?
>
> A:  He asked what happened.  I told him I was suspended.
>
> Q:  And had you been instructed by Mike Brown and Willy Finch not to discuss the investigation?
>
> A:  Right.
>
> Q:  Did you discuss the investigation?
>
> A:  Yep, told him I was suspended.

(Emphasis added.)[2]  Thus, there is no genuine issue of fact with regard to whether the alternative basis for the Plaintiff's termination was pretextual, as the Plaintiff admits violating the instruction he was given.

The Plaintiff argues that, notwithstanding his admitted violation of the instruction that he not discuss the investigation, Lowe's cannot consider that act to be interference with the investigation because the investigation concerned his off-duty conduct, not any apparent violation of Lowe's' employment policies.  He notes that Lowe's' disciplinary policy identifies "refusal to cooperate fully in investigation of loss, injury or policy violation" as a basis for termination, but observes that the investigation into the events at the party do not involve a loss or injury to Lowe's, nor any apparent violation of any Lowe's' policy.   Although semantically pleasing, this argument is not persuasive for at least two reasons.  First, until Lowe's completed its investigation, it would be impossible to know if an injury to Lowe's or a violation of company policy occurred.  The mere fact that the incident occurred off-premises and during non-working hours does not necessarily mean that Lowe's could not be held responsible for the incident.  *See Ferris v. Delta Airlines, Inc.*, 277 F.3d 128, 135 n. 2 (2d Cir. 2001) (citing and discussing "cases

---

[2]In addition, Lowe's contends that the Plaintiff also contacted Bird herself, and told her not to participate in the investigation.  Although the Plaintiff's response denies this assertion as part of a general denial of the contents of the paragraph in which Lowe's makes the assertion, the Plaintiff does not point to evidence in the record that disputes this claim.  Again, because the burden is on the Plaintiff to come forward with <u>evidence</u>, not just conclusory denials, the Court finds that the Plaintiff has not disputed the assertion that he also attempted to persuade Bird not to participate in the investigation.

that have found or implied that sexually abusive conduct committed by supervisors away from the place of employment can sustain employer liability"). Thus, until it determined the precise circumstances of the incident, Lowe's could reasonably assume that the investigation might involve a potential injury to it or a violation of its policies.

Second, even assuming that Lowe's could not be held legally responsible for any injuries sustained by Bird, the investigation was nevertheless appropriate in order to prevent a future loss to Lowe's. Once it was put on notice that the Plaintiff had allegedly raped a co-worker, albeit under private, off-duty circumstances, Lowe's thereafter had an obligation to its other female employees to protect them against the possibility that the Plaintiff might engage in similar conduct against them. *Ferris*, 277 F.3d at 136 ("If an employer is on notice of a likelihood that a particular employee's proclivities place other employees at unreasonable risk of rape, the employer does not escape responsibility to warn or protect likely future victims merely because the abusive employee has not previously abused those particular employees"). Thus, even though the incident with Bird allegedly involved private, off-duty conduct, Lowe's was under an obligation to investigate the incident to ensure that it carried out its legal duty to protect the Plaintiff's other co-workers.

The Plaintiff has failed to come forward with any other facts to suggest that Lowe's' proffered legitimate, non-discriminatory explanation for the Plaintiff's termination is pretextual. As a result, the Plaintiff has not shown that there is a triable issue as to whether he can carry his

ultimate burden on his discrimination claim, and Lowe's is entitled to summary judgment on this claim.

### C.  Contract and promissory estoppel claims

The Plaintiff's remaining claims allege that Lowe's breached a contract with him by terminating him without just cause, and that the Plaintiff relied to his detriment on promises made by Lowe's to comply with certain, unidentified policies.  Extended discussion of these claims is not necessary.

The Plaintiff acknowledges that, nominally, his contract with Lowe's is "at-will," and that as a result, he could be terminated at any time, with or without cause.  However, he argues that his at-will status is constrained by other contractual promises– such as a promise of progressive discipline– made in handbooks or employee policies promulgated by Lowe's.  It is true that Colorado law recognizes that promises made in employee handbooks can modify an employee's at-will status, and thus may be enforceable through a breach of contract or promissory estoppel claim.  *Crawford Rehabilitation Services, Inc. v. Weissman*, 938 P.2d 540, 547 (Colo. 1997).  However, it is undisputed that the disciplinary policy promulgated by Lowe's classifies interference with an investigation as a "Class A" offense for which "normally subject an employee to immediate termination on the first occurrence."  Thus, regardless of whether Lowe's contractually bound itself (or induced the Plaintiff to expect it) to use progressive discipline in some circumstances, there is no dispute that Lowe's never promised that the Plaintiff should

expect anything less than immediate termination for committing a Class A violation such as interfering with an investigation. Accordingly, there is no genuine issue of material fact with regard to the breach of contract and promissory estoppel claims, and Lowe's is entitled to judgment on those claims as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Lowe's Motion for Summary Judgment **(# 36)** is **GRANTED**. A separate Judgment in favor of Lowe's shall enter contemporaneously with this Opinion. The Clerk of the Court shall then close this case.

Dated this 19th day of September, 2005

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge

11